IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 04-cv-00426-MSK-PAC

INGEBORG ENDAHL,

    Plaintiff,

v.

VINNELL CORPORATION,

    Defendant.

_____

**OPINION AND ORDER GRANTING, IN PART,  MOTION FOR SUMMARY JUDGMENT AND ADOPTING RECOMMENDATION**
_____

**THIS MATTER** comes before the Court pursuant to the Defendant's Motion for Summary Judgment **(# 41)**, the Plaintiff's response **(# 45)**, and the Defendant's reply **(# 49)**; and the July 11, 2005 Report and Recommendation **(# 67)** of United States Magistrate Judge Patricia A. Coan that the Plaintiff's Motion to Amend Complaint **(# 53)** be denied and the Defendant's Motion to Strike **(# 57)** be granted, to which no Objections have been filed.

## BACKGROUND

The Plaintiff is a German national.  She was hired by the Defendant in 1999 as a Fingerprint Technician, recording fingerprints of prospective immigrants, and promoted to Quality Assurance Technician in 2000.  In October 2002, the Plaintiff complained via e-mail to her supervisor, Donald Biefnes, that he was prejudiced against her.  In December 2002, Biefnes left the company, and April Garcia was appointed as the Plaintiff's direct supervisor.   The Plaintiff

received various disciplinary warnings and notices between February 2003 and June 9, 2003, at which time she was terminated by R.J. Wooten, the Defendant's Regional Manager overseeing the Plaintiff's work.

The Plaintiff then commenced this action alleging six causes of action: (i) national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; (ii) retaliation in violation of Title VII; (iii) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; (iv) promissory estoppel, apparently under Colorado law, regarding certain promises made by the Defendant in an employee handbook; (v) breach of an express covenant of good faith and fair dealing, the source of which is not clear in the Complaint, but which appears to largely duplicate the promissory estoppel claim; and (vi) wrongful discharge in violation of public policy, apparently asserted under Colorado law, in that the Plaintiff's termination violated public policies of non-discrimination.

The Defendant then filed the instant Motion for Summary Judgment **(# 41)** on all six of the Plaintiff's claims. Specifically, the Defendant contends that the Plaintiff: (i) cannot establish a *prima facie* case of national origin discrimination because her position was eliminated after her termination, and that she cannot establish that the Defendant's proffered reason for her termination is pretextual; (ii) cannot establish a *prima facie* case of retaliation under Title VII because she cannot show a causal connection between her protected activity of complaining to Biefnes and her termination, and she cannot show that the Defendant's proffered reason for her termination is pretextual; (iii) cannot establish a *prima facie* case of age discrimination because her position was eliminated and because she cannot establish that the Defendant's proffered reason for her termination is pretextual; (iv) cannot establish the existence of any enforceable

2

promises to support her promissory estoppel claim; (v) cannot establish any promises of a contractual nature to support the claim of breach of express covenant claim; and (vi) cannot establish any of the elements of a claim of wrongful discharge in violation of public policy.

On May 6, 2005, Magistrate Judge Coan entered the parties' Final Pretrial Order **(# 51)**, but granted leave **(# 52)** to the Defendants to move to strike that portion of the Plaintiff's description of her claims that purported to assert a new claim asserting a hostile working environment and to assert discriminatory actions by Rosa Garcia. Anticipating the Defendants' motion, the Plaintiff then filed a Motion to Amend the Complaint **(# 53)**, seeking to add these claims, and the Defendants then filed a Motion to Strike **(# 57)** the new claims in the Final Pretrial Order. This Court referred **(# 59, 66)** both motions to Magistrate Judge Coan for a recommendation. On July 11, 2005, Magistrate Judge Coan issued a Report and Recommendation **(# 67)**, recommending that the Plaintiff's Motion to Amend be denied and that the Defendants' Motion to Strike be granted. More than 10 days have passed, and no party has filed Objections to that Recommendation.

## ANALYSIS

### A. Standard of Review

1. Summary Judgment

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©; *Celotex Corp. v. Cattret*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F. 3d 567, 569 (10th Cir. 1994); *see also In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 209 F. Supp.2d 1106 (D. Colo. 2002). Whether there is a genuine dispute as to a material fact depends

upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv SAP, Inc.*, 210 F. 3d 1132 (10th Cir. 2000); *Carry v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  The court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *Houston v. Nat'l General Ins. Co.*, 817 F. 2d 83, 85 (10th Cir. 1987); *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995); *Grayson v. American Airlines, Inc.*, 803 F. 2d 1097, 1101 (10th Cir. 1986).

The analysis to be applied differs depending on whether the moving party is also the party with the burden of proof at trial.  Where, as here, the non-movant bears the burden of proof at trial, the non-movant must point to specific evidence establishing a genuine issue of material fact with regard to each challenged element.  *Ribozyme*, 209 F.Supp.2d at 1111; *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002).

2. <u>Recommendation regarding Motion to Amend and Motion to Strike</u>

Where no party files objections to a recommendation, the Court applies whatever standard of review to that recommendation that it deems appropriate.  *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir.1991).  Here, no party has filed objections to the Magistrate Judge's Recommendation that the Plaintiff's Motion to Amend the Complaint be denied or that the Defendants' Motion to Strike be granted.  Nevertheless, the Court will apply the otherwise

applicable *de novo* standard of review that would govern dispositive rulings such as this one under Fed. R. Civ. P. 72(b).

With regard to the Motion to Amend, leave to amend a pleading shall be "freely granted" absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Beerheide v. Zavaras*, 997 F.Supp. 1405, 1409 (D. Colo. 1998), *citing Foman v. Davis*, 371 U.S. 178, 182 (1962).

### B. The Summary Judgment Motion

#### 1. National origin discrimination claim

National origin discrimination claims under Title VII are subject to the traditional *McDonnell-Douglas* apportionment of proof. In one formulation of that test, the Plaintiff must first establish a *prima facie* case by showing: (i) that she is a member of a protected class; (ii) that she was qualified for the position she held; (iii) that she was terminated; and (iv) that her position remained open following her discharge. *Amro v. Boeing Co.*, 232 F.3d 790, 796 (10th Cir. 2000). Once a *prima facie* case is established, the burden shifts to the employer to present a legitimate, non-discriminatory reason for the adverse action, and the Plaintiff then bears the ultimate burden of proving that proffered reason to be a pretext for discrimination. *Id.*

However, as Title VII jurisprudence has developed, courts, including the 10th Circuit, have broadened the ways in which employees can establish the fourth element of the *prima facie* case. In its recent decision in *Plotke v. White*, 405 F.3d 1092, 1099-1100 (10th Cir. 2005), the 10th Circuit explained that the employee's position remaining open might be "one way a plaintiff may

establish a prima facie case," "the elimination of the position does not necessarily eviscerate a plaintiff's claim that her discharge was motivated by discrimination." *Id.* at 1100 (emphasis in original, ellipsis and bracketing omitted). Indeed, looking solely to the continued existence of the employee's position might be useful where the employer contends that the legitimate reason for the employee's termination was the abolition of the position, where the employer contends that the termination was, in fact, motivated by performance problems or unsatisfactory conduct, the abolishment of the employee's position following the employee's termination is "irrelevant." *Id.*

Here, the Defendants contend that the Plaintiff was terminated because she "repeatedly engaged in rude, disrespectful behavior toward other employees and her supervisors, and insubordination." *Docket # 42 at 7*. *Plotke* suggests that, having justified the Plaintiff's termination on performance grounds, the Defendant's subsequent handling of the Plaintiff's job title is of no significance. Rather, for purposes of determining whether a *prima facie* case exists, the Court engages in a broader analysis, looking at whether the Plaintiff's termination arose in "circumstances giving rise to an inference of discrimination." *Plotke,* 405 F.3d at 1101. This element can be satisfied in many ways, such as proof of "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus [or] preferential treatment given to employees outside the protected class." *Id.*

The Plaintiff has alleged several instances of actions or remarks by Biefnes that could be viewed as reflecting his own discriminatory animus. For example, Biefnes allegedly spoke negatively about the Plaintiff and the other "foreigners" working for him, and posted an aggressively nativist poster on the company bulletin board. At the same time, *Plotke* requires proof of discriminatory actions or remarks "by decisionmakers." *Id.* In this regard, the

6

Defendants deny that Biefnes was a decisionmaker concerning the Plaintiff's termination, and assert that the person making the decision to terminate the Plaintiff was R. J. Wooten, the Central Region Manager of the Defendant. Wooten's affidavit asserts only he, not Biefnes nor Rosa Garcia, was authorized to terminate the Plaintiff's employment. Indeed, the Plaintiff concedes that it was Wooten who terminated her employment, *Docket* # 46 at 7, ¶ 34, and she does not dispute the Defendant's contention that Biefnes had no role in that decision. Thus, to show discriminatory animus by a decisionmaker, the Plaintiff must adduce evidence that <u>Wooten</u> harbored some hostility towards her because of her national origin.

The Plaintiff has failed to do so: other than indicating that it was Wooten who terminated her, there is no mention whatsoever of Wooten in either the Plaintiff's response to the Defendants motion or her accompanying brief. The bulk of the Plaintiff's response describes various jingoistic statements and actions by Biefnes, all of which are irrelevant to the issue of Wooten's motivation. The Plaintiff does not adduce any evidence to suggest that Wooten shared Biefnes' philosophy, nor that Biefnes' statements or actions reflected the policy of the Defendants, rather than his personal expression of his beliefs.[1] The Plaintiff also asserts that the Defendant engaged in a superficial investigation of an anonymous complaint regarding the existence of an apparent English-language only policy. The precise manner in which the Plaintiff suggests that this reflects national origin-animus on the part of Wooten or any other decisionmaker is not clear, particularly

---

[1] To the contrary, the unchallenged evidence suggests that Biefnes did <u>not</u> purport to speak for the company when posting the offensive flyer on the bulletin board. Exhibit A-11 to the Defendant's brief is a memo, apparently authored by Wooten, noting that he had met with Biefnes to review "mistakes" Biefnes had made, including "posting [ ] unauthorized items on the bulletin board." Similarly, in excerpts of Biefnes' deposition submitted by the Plaintiff, Biefnes acknowledges that he should not have posted the flyer on the bulletin board because "it's not company business." *Docket* # 46, Ex. 1 at 36-37.

7

as the Plaintiff does not allege that Wooten was involved with the investigation in any way. Moreover, the Plaintiff acknowledges that, in October 2002, all staff were informed that there was no such policy.

While the Court can sympathize with the Plaintiff over the difficulties of working under a jingoistic supervisor, the Plaintiff has failed to adduce evidence that would suggest that her termination– or any other adverse employment action[2] – occurred under circumstances giving rise to an inference that the decisionmaker– Wooten– acted with discriminatory animus. Accordingly, the Plaintiff has failed to show that she can establish a *prima facie* case, and the Defendant is entitled to summary judgment on her claim of national origin discrimination.

### 2. Retaliation claim

Claims of retaliation under Title VII follow a slightly modified version of the *McDonnell-Douglas* apportionment of proof. The Plaintiff must first establish a *prima facie* case by showing (i) that she engaged in a protected activity; (ii) that she suffered an adverse employment action; and (iii) that that adverse action was causally connected to the protected activity. *Miller v. Automobile Club of New Mexico, Inc.*, 420 F.3d 1098, 1119-20 (10th Cir. 2005). The employer

---

[2]The Plaintiff states in her response that her termination is not the only adverse action upon which she can establish a *prima facie* claim of discrimination, but she does not specifically identify any such actions that allegedly support her national origin discrimination claim. Regarding her retaliation claim, she asserts that several written reprimands placed in her personnel file constitute adverse actions. Even assuming that these reprimands could constitute adverse actions for purposes of her national origin discrimination claim, the Plaintiff has not shown that they arose in circumstances giving rise to an inference of discrimination. With one exception, the reprimands were issued after Biefnes had left the Defendant's employ, and thus, are not tainted by any discriminatory animus attributable to Biefnes. Most reprimands were issued by Garcia, and the Plaintiff does not point to any evidence suggesting that Garcia harbored any animus towards the Plaintiff based on her national origin. The one reprimand issued during Biefnes' tenure appears to have originated not by Biefnes himself, but by Wooten, who states that he personally observed the Plaintiff being rude to Biefnes without provocation.

must then come forward with a legitimate, non-retaliatory reason for the adverse action, and the Plaintiff must show that reason to be pretext. *Id.*.

The key element of the *prima facie* claim is the establishment of a causal connection between protected activity and employment action. Although an employee may satisfy this element by showing a close temporal proximity between the two events, the temporal distance must be "very close[ ]," or else the Plaintiff must adduce additional evidence beyond temporal proximity to survive. *Id.* at 1121, *quoting Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir.2004) (emphasis in original). For example, the 10th Circuit in *Meiners* found a six-week gap between protected activity and adverse action to be sufficient proof of causation, but rejected the assertion in *Miller* that a six-month gap, standing alone, would be sufficient to establish causation. *Miller*, 420 F.3d at 1121.

The Defendant challenges the Plaintiff's ability to establish the causal element of the *prima facie* case, pointing out that the Plaintiff's sole specific instance of protected activity[3]– the writing of a letter complaining about Biefnes– occurred on October 24, 2002, and yet her termination did not occur until June 2003, more than eight months later. The Plaintiff offers two arguments in response: (i) that the Defendants engaged in additional adverse actions, such as unwarranted written reprimands and discipline, closer in time to her protected activity; and (ii) that the aforementioned hostility to foreigners constitutes additional evidence of retaliatory animus, which, coupled with temporal proximity, establishes a causal connection.

---

[3] The Plaintiff also alleges that she "stuck up for" other Russian employees, but beyond that characterization, she points to no specific evidence of actual acts that could be considered "protected activity" under Title VII.

The first argument is premised upon a series of memos, letters, and formal discipline involving the Plaintiff, beginning on November 29, 2002. Specifically, the items in question are as follows:

> • a November 29, 2002 memo to Lee Bandel, a Project Manager for the Defendant, from either Wooten or Human Resources Manager Sarah Bury, describing their investigation prompted by the Plaintiff's letter. The memo summarizes conversations between Wooten or Bury with various employees. The author of the memo reported that "most of the employees think [the Plaintiff] is rude and she does not treat them with dignity and respect," and observed that the Plaintiff "was very hostile and would not make a commitment to work with [Biefnes] in the future";
> 
> • a December 9, 2002 letter from Bury to the Plaintiff as a follow-up to the investigation. The letter explains that Biefnes' recent decision to assign supervisory functions to Garcia instead of the Plaintiff (an action that appears to have prompted the Plaintiff's October 24, 2002 letter) stemmed from Biefnes' perception that the Plaintiff's "attitude towards other employees was often unprofessional and disruptive";
> 
> • a February 4, 2003 written reprimand of the Plaintiff by Wooten for various acts of failing to follow procedures and for being disrespectful of other employees. The events cited in the reprimand included the Plaintiff's conduct during Wooten and Bury's investigation;
> 
> • a February 6, 2003 verbal counseling by Garcia for treating a customer and a co-worker in an "embarass[ing]" manner;
> 
> • a February 13, 2003 "final warning" by Wooten for insubordination;
> 
> • a February 20, 2003 "memorandum for record" by Wooten, memorializing his observations regarding his discussions with the Plaintiff at the time he delivered the February 13, 2003 final warning, including his observation that the Plaintiff "is the most belligerent and disrespectful employee I have encountered on this contract";
> 
> • a March 11, 2003 verbal counseling by Garcia for procedure violations and attitude;
> 
> • a June 4, 2003 letter by Garcia, apparently to the Plaintiff's file, describing an incident in which the Plaintiff accused Garcia of violating the Privacy Act by copying a customer's records; and

10

> • a June 5, 2003 letter by Garcia, apparently to the Plaintiff's file, describing a confrontation between the Plaintiff and a co-worker about the temperature in the office.

Although the Court ascribes less significance to memos describing conclusions reached during the investigation that it does to formal reprimands and discipline, it is clear that the Plaintiff received a steady stream of official and unofficial discipline and criticism within a short period of time after writing her complaint letter in October 2002. Disciplinary actions short of termination can be considered adverse employment actions if they increase the likelihood that the employee will be terminated or otherwise affect the employee's future employment prospects. *Medina v. Income Support Division,* 413 F.3d 1131, 1137 (10th Cir. 2005). The formal discipline administered to the Plaintiff certainly rises to this level– for example, the February 4, 2003 written reprimand warns the Plaintiff that "[a]dditional incidences may lead to . . . termination of employment."

Thus, the Court finds that the close temporal proximity between the Plaintiff's complaint letter and the imposition of formal and informal discipline against are sufficient to establish a *prima facie* case of retaliation. The Court need not address the Plaintiff's alternative argument that additional indirect evidence of retaliatory animus existed to support a retaliation claim based on Wooten's decision to terminate her. Having established a *prima facie* case, the Plaintiff has shifted the burden to the Defendant to articulate a non-discriminatory reason for the actions against her. The Defendants have done so. Each of the disciplinary notices issued to the Plaintiff describe a work-related infraction, facially unrelated to the Plaintiff's complaint letter.

Thus, the burden shifts back to the Plaintiff to adduce evidence that would suggest that the discipline imposed against her is actually a pretext for retaliation. Pretext may be shown by

producing "evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of creedence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Jaramillo v. Colorado Judicial Dept.*, 427 F.3d 1303, 1308 (10th Cir. 2005). Typically, evidence of pretext might include proof regarding prior treatment of the Plaintiff, evidence of the employer's policies or practices regarding employment of others in the protected class, disturbing procedural irregularities, or the use of subjective criteria. *Id.*

The Plaintiff's attempt to establish pretext is skeletal. She does not directly address the validity of any of the individual items of discipline. Instead, she asserts only that "Plaintiff unequivocally denies being discourteous or raising her voice to any other employee or applicant." *Docket* # 46 at 7, ¶ 36. However, the Plaintiff's own belief as to whether or not her behavior was rude is irrelevant. The question to be answered is whether Wooten (and Garcia, to the extent Garcia's observations were factored into Wooten's decision) reasonably believed the Plaintiff was rude. *See e.g. Tran v. Trustees of State Colleges,* 355 F.3d 1263, 1270 (10th Cir. 2004) ("[t]he pertinent question in determining pretext is not whether the employer was right to think the employee engaged in misconduct, but whether that belief was genuine or pretextual. The test is good faith belief. Accordingly, it is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of [her] own relative performance.") (citations and internal quotes omitted). To successfully demonstrate that Wooten's justification was pretextual, the Plaintiff must either show that he did not actually believe that the Plaintiff was rude, or show that that belief was not reasonable.

12

The Plaintiff's denial that she was ever rude does not address the reasonableness of Wooten's belief that she was. A perception of rudeness, like beauty, is necessarily in the eye of the beholder. Although the Court is required to view such a subjective determination with scepticism, *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1218 (10th Cir. 2002), an employer's reliance on subjective criteria is not *per se* pretextual. *Id., citing Bauer v. Bailar*, 647 F.2d 1037, 1046 (10th Cir. 1981); *see also Kelley v. Goodyear Tire & Rubber Co.*, 220 F.3d 1174, 1178 (10th Cir. 2000) (use of subjective criteria alone will not prove pretext in the absence of other facts suggesting discrimination). Rather, the legitimacy of a subjective justification must be viewed in light of the particular facts of the case. *Bauer*, *id.* For example, the court in *Bauer* observed that some the abilities sought to be measured by the employer are not those that can be measured by objective standards. *Id.* Similarly, there is no objective standard by which an employer can measure an employee's courtesy; such a determination will always require the employer to rely on subjective assessments.

The Court notes that the record reflects that both Wooten and Garcia personally observed separate instances of conduct by the Plaintiff that they each perceived to be rude. The fact that two individuals each reached the same subjective conclusion based on separate observations lends a degree of reliability to those conclusions. By contrast, the Plaintiff has not offered the testimony of any eyewitness to any of the events, stating that the witness did not consider the Plaintiff's conduct to be rude, nor presented affidavits from witnesses as to the Plaintiff's general workplace demeanor, nor pointed to other employees who allegedly demonstrated similar levels of discourtesy without incurring similar discipline. In short, although the criteria in question is almost entirely subjective, the Plaintiff has not presented anything other than her own say-so to

suggest that the Defendant's reliance upon that subjective criteria was pretextual. This is insufficient to demonstrate that even a purely subjective determination is pretextual. To hold otherwise would be to essentially establish a *per se* rule that determinations made upon subjective criteria survive summary judgment, and would be contrary to the 10th Circuit's discussions of the issue.

Accordingly, the Court finds that the Plaintiff has failed to come forward with sufficient evidence to demonstrate a triable issue of fact with regard to whether the Defendant's justification for her termination was pretext for retaliation. The Defendant is entitled to summary judgment on the Plaintiff's retaliation claim.

### 3. Age Discrimination

As with the Title VII claims, the Plaintiff's age discrimination claim follows the *McDonnell-Douglas* burden-shifting framework. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000). Once again, the Defendant first challenges the Plaintiff's ability to establish the fourth element of her *prima facie* case– that her termination arose in circumstances giving rise to an inference of discrimination.

For the same reasons as the Plaintiff's national origin claim, her claim that her termination– brought about by Wooten– can be discriminatory by inference based on instances of Biefnes referring to the Plaintiff as an "old fart" is without merit. The Plaintiff also alleges that, on a single occasion, Garcia stated to her that "you are not doing your job; you must be getting old." Taking this lone scrap of evidence in the light most favorable to the Plaintiff, the fact that Garcia associated the Plaintiff's job performance with her age might give rise to an inference that the discipline handed out by Garcia was motivated, in part or whole, by age-based animus. This is


sufficient to establish a *prima facie* case of age discrimination regarding the discipline administered by Garcia.[4]

Thus, the Court turns to the question of whether the Plaintiff can demonstrate that the discipline administered by Garcia was pretextual. In many respects, the Court's prior discussion of the issue of pretext is applicable here as well. However, unlike the Plaintiff's retaliation claim, which relied entirely on the otherwise neutral factor of temporal proximity to raise an inference of discrimination, the Plaintiff also has evidence– however slight– to suggest that Garcia harbored age-based animus. Although the evidence in support does not appear to be especially compelling, and may not survive a Fed. R. Civ. P. 50 motion at trial, a reasonable factfinder could conclude that Garcia's subjective assessments of the Plaintiff's demeanor might have been tinged with age-based animus. Viewing the record in the light most favorable to the Plaintiff, the Court finds that the Plaintiff has presented sufficient evidence to raise a triable issue of fact as to whether Garcia's discipline of the Plaintiff was pretext for prohibited age discrimination. The Plaintiff's claim of age discrimination can proceed to trial.

    4. Promissory estoppel

To prove a claim of promissory estoppel under Colorado law, the Plaintiff must show: (i) that the Defendant made a promise to her; (ii) that the Defendant could reasonably have expected the Plaintiff to rely on that promise; (iii) the Plaintiff did, in fact, rely upon the promise; and (iv)

---

[4] One could argue that, to the extent Wooten's decision to terminate the Plaintiff was based in part on reports by Garcia without independent corroboration, the termination might be suspect as well. That issue is not presented in the parties' briefing, and the Court declines to resolve it on the present record.

that the promise must be enforced to prevent injustice. The Defendant contends that the Plaintiff cannot establish that it made any promise to her.

In response, the Plaintiff claims that the enforceable promise is a statement in the Defendant's employee handbook that reads "[the Defendant] imposes only valid, job-related requirements for hiring, promotion and assignment. Personnel decisions, such as compensation, benefits, transfers, [and] discipline . . . are administered in compliance with all federal, state, and local equal employment laws." This is insufficient to constitute an enforceable promise. To be enforceable on a promissory estoppel theory, a promise must be one which the employee could reasonably consider to be a commitment, not a mere description of the employer's policies. *George v. Ute Water Conservancy District*, 950 P.2d 1195, 1198 (Colo. App.1997). A promise to abide by applicable employment laws, such as that asserted by the Plaintiff here, is completely illusory– the employer is required to abide by the laws whether it promises to or not. In other words, an employer agreeing to abide by the law is not "committing" itself to perform some act it is not already required to do. At best, a promise of non-discrimination is a statement of the employer's policies. Accordingly, a promise of compliance with anti-discrimination laws is not enforceable under a theory of promissory estoppel. The Defendant is entitled to summary judgment on this claim.

### 5. Breach of covenant of good faith

For similar reasons, the Defendant is entitled to summary judgment on the Plaintiff's claim of breach of the covenant of good faith and fair dealing. The Plaintiff states that this claim arises from the same promise by the Defendant to comply with federal, state, and local laws. Because this "promise" is completely illusory– the Defendant accepts no detriment by promising to do an

act it is already legally obligated to do– it cannot support a contractual claim of breach. The Defendant is entitled to summary judgment on this claim.

### 6. Wrongful discharge in violation of public policy

The Plaintiff contends that her termination violated public policy, in that it contravened Colorado's statutes prohibiting discrimination on the basis of age and national origin.

Colorado recognizes a narrow cause of action for wrongful discharge in violation of public policy, restricting an employer's right to terminate when the termination contravenes accepted and substantial public policies as embodied by legislative declarations, professional codes of ethics, or other sources. *Wisehart v. Meganck*, 66 P.3d 124, 127 (Colo. App. 2002). Even assuming that the Plaintiff were otherwise correct that the tort could lie in these circumstances based on the public policies against employment discrimination, she is nevertheless barred from pursuing it because the very statute that she relies upon as embodying the policy, the Colorado Anti-Discrimination Act, C.R.S. § 24-34-402, establishes a remedy for such prohibited discrimination. In *Gamble v. Levitz Furniture Co.*, 759 P.2d 761 (Colo. App.1988), the court affirmed a grant of summary judgment on a claim of wrongful discharge premised upon discrimination in violation of C.R.S. § 24-34-402, noting that the statute "provides the employee with a wrongful discharge remedy." *See also Caspar v. Lucent Technologies, Inc.*, 280 F.Supp.2d 1246, 1249 (D. Colo. 2003), *citing Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 107, n. 5 (Colo.1992) (confirming there would be no public policy exception to the at-will employment doctrine when a statute at issue provides a remedy). Because Colorado law provides

a statutory remedy[5] for the public policy violation claimed by the Plaintiff, the Defendants are entitled to summary judgment on this claim.

### C. Magistrate Judge's Recommendation

Magistrate Judge Coan recommended that the Court deny the Plaintiff's Motion to Amend, and that it grant the Defendant's Motion to Strike references to a hostile working environment claim from the Final Pretrial Order.  Neither party has filed Objections to this Recommendation.  Nevertheless, the Court reviews the Recommendation under the otherwise applicable *de novo* standard of Fed. R. Civ. P. 72(b), as the Recommendation is dispositive of any putative hostile environment claim.

Although the Court has considered the matter *de novo*, its analysis and conclusions are effectively identical to those of Magistrate Judge Coan.  The Court adopts the Recommendation in its entirety.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment is **GRANTED IN PART**, insofar as the Defendants are entitled to summary judgment on the Plaintiff's claims for national origin discrimination, retaliation, promissory estoppel, breach of the covenant of good faith, and wrongful discharge, and **DENIED IN PART**, insofar as the Plaintiff's age discrimination claim remains for trial.  The Court **ADOPTS** the July 11, 2005 Report and Recommendation **(# 67)** of Magistrate Judge Coan, **DENIES** the Plaintiff's Motion to Amend the

---

[5]The fact that the Plaintiff does not assert claims under the Colorado Anti-Discrimination Act is irrelevant, as it is the existence of a statutory remedy, not the Plaintiff's decision to pursue it, that precludes the tort under these circumstances.  To hold otherwise would permit the employee to avoid any statutorily-created limitations on the remedy by surrendering the statutory claim and suing in tort.

Complaint **(# 53)**, and **GRANTS** the Defendant's Motion to Strike **(# 57)** references to a hostile environment claim from the Final Pretrial Order.

Dated this 10th day of January, 2006

**BY THE COURT:**

*/s/ Marcia S. Krieger*

Marcia S. Krieger
United States District Judge